*459 ORDER
JONES, J.
The Plaintiff, mother of Paige Brown, deceased, Filed this action against the father of Paige seeking court authority to determine the funeral arrangements for Paige, who tragically died in an auto accident and whose body was transported to Hennepin County, Minnesota for an autopsy. The mother wishes that the child’s body be available for visitation by family and friends on the White Earth reservation, where the father is a Band member, and then brought to Leech Lake for visitation and burial on the Leech Lake reservation, where the child and mother are members. The father and his family, conversely, request that the child’s body be available for visitation on the Leech Lake reservation, but ultimately be buried on the White Earth reservation. Emergency hearing was held on the 27th day of May 2009 at 4:30 PM with both Parties appearing personally for hearing along with family members. The father also appeared through legal counsel, Charles LaDue,[1] Counsel for the father initially asserted that this Court lacked jurisdiction over the child because the child’s body is not located on the Leeeh Lake reservation and because the legal guardians of the child are located on the White Earth reservation. The Court took the testimony of both Parties and the testimony of other family members including the child’s paternal grandfather and the child’s maternal grandmother and aunt. Based upon that testimony the Court finds as follows:
1. Paige Brown was an enrolled member of the Leech Lake Band of Ojibwe Indians as is her mother, Autumn LaGarde. Paige’s father, Justin Brown, is an enrolled member of the White Earth Band;
2. Paige Carissa Brown was born on February 5, 1992 [2] and at the time of her tragic death was seventeen years of age;
*460 3. Paige was born to Autumn and Justin out of wedlock and neither parent has commenced any private custody proceedings against the other to obtain custody of the child;
4. That on January 15, 2002 Beltrami County District Court Judge Paul E. Rasmussen entered a permanent placement order placing the legal custody of Paige with her paternal grandparents, Ken and Aurelia Brown, based upon Child Protection proceedings filed in that County premised primarily on the mother’s drug use and the father’s inability to provide care for the child due to a lack of a home and some legal proceedings;
5. That Ken and Aurelia Brown reside on the White Earth Indian reservation and after this order, and for sometime before the order was executed, Paige resided with them on the White Earth Indian reservation;
6. That sometime in 2005 Paige expressed a desire to live with her maternal aunt, Gina Headbird. who lives in Cass Lake. Minnesota on the Leech Lake Indian reservation;
7. That from 2005 to the death of Paige, she resided with her aunt, Gina, and back with her grandparents on the White Earth reservation. It appears from the school records presented to the Court, as well as probation records regarding Paige, that at the time of her death she resided with Gina Headbird on the Leech Lake reservation. She resided there with the consent of her legal guardians, her grandparents;
8. Gina Headbird never received any legal custody order appointing her the guardian of Paige, nor did the grandparents execute any documents transferring their custody to Gina;
9.That neither the mother nor the father of Paige exercised custodial rights over Paige from 2002 to the time of her death;
10. That there is no direct Band law governing the disposition of decedents when a dispute between the families of the deceased breaks out. Band law directs that this Court apply customary' law or federal and stale law in the absence of Band written or customary law;
11. That under federal law. the Indian Child Welfare Act, 25 USC 1903, the paternal grandparents of Paige were “Indian custodians”, as that term is defined under federal law because they had been granted the custody of the child by a state court with jurisdiction over the child;
12. That under federal law, the maternal aunt, Gina Headbird, is also to be considered an “Indian custodian” of the child because the grandparents had voluntarily placed the child there with the consent of the parents and the aunt was exercising custodial rights at the time of the death of the child;
13. That Minnesota law has a relevant provision at Minnesota Statutes 149A.80 governing the disposition of the bodies of decedents in the face of an inter-family dispute that is relevant in this case and does not conflict with Leech Lake customary law. That provision gives the “parents” of the child equal say in where the child is to be buried. The Court also finds that federal law would give the “Indian custodians” an equal say in where the *461 child is to be buried. Under Minnesota law when there is a conflict between parties with equal say over the disposition of the child’s remains the Court may look to the wishes of the family members in the order of their eligibility to inherit from the child. Again balancing those factors leads to an irreconcilable conflict because the paternal grandfather and maternal grandmother disagree over where to bury the child;
14. In the face of a conflict such as this it is the Court’s responsibility to determine which community the child had more contacts with based upon such criteria as place of enrollment, place of residence at death and duration of residence in each community;
5. Utilizing those criteria this Court finds that Paige had more contacts with the Leech Lake reservation because she was an enrolled Leech Lake member, resided there at her death, and lived equal time in her life on Leech Lake and White Earth reservations;
WHEREFORE based upon the foregoing findings of fact the Court enters the following
CONCLUSIONS OF LAW
1. This Court has jurisdiction over this dispute because the decedent in question was an enrolled member of the Leech Lake Indian reservation residing upon the Leech Lake reservation at the time of her death;
2. That because the parents, Indian custodians and grandparents are in dispute as to where the child should be buried the Court finds that it is appropriate to determine which Band and community the child had the most significant contacts with;
3. That because the child was a Leech Lake member residing with her aunt on the Leech Lake reservation at the time of her death, and because the other factors are equal pertaining to family members on each reservation and length of time on each reservation, the Court finds that it would be most appropriate to permit the child to be buried on the Leech Lake reservation under the direction of the mother and aunt of the child;
4. That this order is in no way meant to disparage the White Earth Band or the White Earth family members as the Court recognizes their love for the child and wishes to bury her in the White Earth community. That the child’s body should be brought to the White Earth reservation for an appropriate viewing and grieving.
WHEREFORE, based upon the foregoing findings of fact and conclusions of law it is hereby
ORDERED, ADJUDGED, AND DECREED that the funeral home in possession of the body of Paige Carissa Brown. DOB: 2/5/92, shall release her body to her mother. Autumn LaGarde, and aunt, Gina Headbird, for appropriate viewing and services on both the White Earth and Leech Lake Indian reservations with burial on the Leech Lake reservation under the supervision of the mother and aunt.

. The maternal grandmother of Paige objected to Mr. LaDue representing the father and his father in the proceedings claiming that he is only permitted to represent the White Earth Band and not its members. The Court sees no grounds to disqualify Mr. LaDue.

. There is some confusion in the tecord on the date of birth of Paige as Leech Lake records indicate that she was seventeen at the time of her death while the Beltrami County District Court order of January 15, 2002 placing the custody of Paige with her grandfather has her date of birth as February 28, 1991, which would have made her an adult at the time of her death.